UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------)
Fisher-Cal Industries, Inc.                )
37 Pepermint Lane                          )
Willingboro, NJ 08046                      )
                                           )
        PLAINTIFF                          )
                                           )
        V.                                 )
                                           )
UNITED STATES OF AMERICA                   )
555 4TH STREET, N.W.                       ) Case No. _____
WASHINGTON, D.C. 20001,                    )
                                           )
DEPARTMENT OF DEFENSE                      )
                                           )
        AND                                )
                                           )
DEPARTMENT OF THE AIR FORCE                )
DOVER AIR FORCE BASE                       )
DELEWARE                                   )
                                           )
                                           )
        DEFENDANTS.                        )
-------------------------------------------)
```

## VERIFIED ORIGINAL COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff brings this action for: (a) Declaratory Judgment that Defendants' decision to insource the multi-media services performed under Plaintiff's contract such that the services are performed by Defendants' own civilian employees is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and (b) Injunctive Relief to preliminarily and permanently enjoin and set aside same.

## Parties

1.    Plaintiff is a small business government contractor, a provider of multi-media services.  Plaintiff is organized in the State of New Jersey.

2.    Plaintiff complains about the conduct of the: (a) Department of Defense ("DoD"), and (b) Department of the Air Force ("USAF"), Dover Air Force Base ("AFB").  DoD and USAF, Dover AFB are referred herein jointly as "Defendants".  DoD and Department of the Air Force, Dover AFB are agencies of the United States of America.

## Jurisdiction

3.    This Court has original jurisdiction to review the federal questions contained herein, arising under the laws of the United States.  28 U.S.C. § 1331.

4.    This action _solely_ challenges Defendants' compliance with their own guidelines and procedures regarding the decision to insource.  The relief Plaintiff seeks is for the court to hold Defendants' insourcing decision unlawful as a violation of Defendants' own insourcing guidelines and procedures, and to set the decision aside.    Accordingly, this Court has original jurisdiction to review the allegations contained herein, that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.   5 U.S.C. § 702. See _SRS Technologies v. United States_, 843 F. Supp. 740, 742-744 (D.D.C. 1994) (Court determined that this is

a "classic case for APA jurisdiction" under 5 U.S.C. § 702 because the plaintiff is "seeking judicial review of agency actions allegedly in violation of agency regulation. . . . In sum because this case is fundamentally a dispute about the meaning of regulations, and not about contract law, district court jurisdiction is appropriate.")

5.   The complaint only seeks declaratory and injunctive relief.  Accordingly, Plaintiff seeks relief other than money damages and comes within the United States' waiver of sovereign immunity as stated in the APA if the limitation stated in the APA regarding the reach of its waiver of immunity does not apply.  The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  See 5 U.S.C. § 702.

(A)   The complaint does not allege a breach of contract, and seeks no contractual relief.  No contract claim is alleged.   Plaintiff does not seek money damages.   Thus, the Contract Dispute Act is not applicable to this action, and the subject matter jurisdiction falls outside of 28 U.S.C. § 1491(a), the jurisdictional statute of the United States Court of Federal Claims (CFC) to hear monetary claims founded on a

contract with the United States.[1] See SRS Technologies v. United States, 843 F. Supp. 740, 742-744 (D.D.C. 1994). There, this

---

[1] The CFC has jurisdiction over two broad categories of cases. Section 1491(a) of Title 28 provides that the CFC has jurisdiction to hear claims for money damages

> founded either on the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

This is the CFC's traditional jurisdiction under the Tucker Act. See, e.g., United States v. Testan, 424 U.S.C. 392, 398, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976). In 1996, Congress amended the Tucker Act by enacting the Administrative Disputes Resolution Act ("ADRA"), Pub. L. 104-320, 110 Stat. 3870 (1996). The ADRA added § 1491(b), expanding the CFC's jurisdiction to include both pre-award and post-award "bid protest" cases. [4] Such cases involve claims by an

> interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . [T]he United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

Court held that jurisdiction did not fall within the CFC, explaining:

> The present case differs from *Ingersoll-Rand* in all three respects. First, this case could not possibly have been founded on an alleged violation of any contractual provision. In *Ingersoll-Rand,* one of the key points of contention was a regulation that had been incorporated into the contract itself, which meant that the entire cause could have been brought under the contract. Here, by contrast, the issue is whether DoD violated its own regulations (never incorporated into the contract), not whether DoD violated some contractual provision. The case is not founded on any contractual provision at all. DoD is simply taking the contract away from SRS by refusing to place further task order under it, and is awarding the same contract to SCITEK. What makes this DOD action unlawful is not contract law; facially, at least, contract law appears to leave DOD free to do this to SRS, since DOD is not terminating the SRS contract and since there are no guaranteed orders under the contract. SRS does not, and apparently cannot, make a contract claim.

---

footnote continued

*Id.* § 1491(b). The ADRA originally granted the CFC and the United States district courts concurrent jurisdiction to entertain pre-award and post-award bid protest cases; however, § 12(d) of the ADRA provided that jurisdiction in the district courts would expire on January 1, 2011, unless extended by Congress. Because Congress elected not to renew the § 1491(b) jurisdiction of the district courts, the CFC is now the exclusive judicial forum for bid protest actions.

SRS's sole available argument that this DOD action is unlawful stems not from contract law, but from DOD regulation.

(B) The complaint does not allege an objection to a solicitation, or to a proposed award, or to the award of a contract. Rather, Plaintiff objects to Defendants' decision to insource, which is a decision that implicitly includes a decision not to procure and therefore not to solicit, award, contract or propose a contract. Thus, subject matter jurisdiction falls outside of 28 U.S.C. § 1491(b), the bid protest jurisdictional statute for the CFC.

6. This Court may compel a federal agency or officer or employee thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. Relief may be granted under the Administrative Procedure Act, 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

## Standing

7. Plaintiff has standing under the Administrative Procedure Act to bring this action. Plaintiff has "suffer[ed] a legal wrong because of agency action, [and is] . . . adversely affected [and] . . . aggrieved by agency action within the meaning of" the federal statutes set forth herein. 5 U.S.C. § 702.

A. Plaintiff performed the multi-media services for Dover AFB under a competitively awarded contract, namely, contract FA4497-10-D-0001.

6

B.   The agency action is Defendants' decision to convert the aforesaid service performed under Plaintiff's contact to an in-sourcing service performed by DoD civilian employees.   The agency action fails to comply with the guidelines and procedures of 10 U.S.C. § 2463.   As a consequence, the agency action has unfairly and wrongfully deprived Plaintiff from competing for award of a contract for such services.

C.   Plaintiff's interests fall within the "zone of interests" that are protected by 10 U.S.C. § 2463.   The requirement of 10 U.S.C. § 2463 for guidelines and procedures was enacted by Congress to afford protection to DoD civilian employees and private sector incumbent contractors as it requires that Defendants consider using DoD civilian employees to perform functions that are performed by private sector, incumbent contractors by complying with a standard that protects the incumbent contractor from arbitrary decisions that convert the contract service to in-source service.

### Venue

8.   This Court is the proper venue for this action.   28 U.S.C. § 1391(e); 5 U.S.C. § 703.

### Statement of the Case

9.   Summary:  This action is summarized in this paragraph and alleged with particularity in the following paragraphs. This action is against Defendants for:  (A) failing to conduct

7

an economic cost analysis for determining whether to perform the multi-media services using DoD civilian employees or private contractors under a competitively awarded contract; and (B) *assuming arguendo* that Defendants conducted an economic cost analysis, it was unreasonable.

10. On 6 July 2009 Defendants issued Request for Proposal ("RFP") FA4497-09-R-0006 (hereinafter "the RFP") to acquire multimedia services at Dover AFB, Delaware.

11. The scope of the aforesaid multi-media services follows:

> The contractor shall provide qualified Photographers, including 24-hour/7 days per week alert/emergency photography on location, additional equipment not included in the Government Furnished Equipment List (attached), tools, materials, supplies, supervision and other items necessary to perform Photographic services in a secure and timely manner, to include AMC Base Multimedia Centers, and all authorized tenant units, based on current support agreements between each Base and tenant unit, in accordance with commercial standards and all base and environmental requirements applicable to this contract. All contractor employees are required to read and comply with AFI 33-117, "Multimedia Management" and reference DOD5040.6-M-1. Publications and forms specified in this Performance Work Statement can be found at **http://afpubs.hq.af.mil/**.

12. The RFP anticipated award of a five year contract, to include a one year base year of October 1, 2009 to September 30, 2010, and four one year option years, with the fourth option year ending on September 30, 2014.

13.   Plaintiff submitted an offer in response to the RFP, and was awarded contract FA4497-10-D-0001 with an effective date of 15 September 2009 (hereinafter "the Contract").

14.   After completion of the Contract's base year, Defendants required Plaintiff to continue performing under the Contract for an additional six months under FAR Clause 52.217-8 of the contract.

15.   The contract ended on March 31, 2011.

16.   Defendants informed Plaintiff of its decision to convert the services covered by the Contract to services performed in-source in accordance with 10 U.S.C. § 2463 (hereinafter "In-Sourcing Decision"). Defendants informed Plaintiff that its In-Sourcing Decision was based on cost savings.

17.   10 U.S.C. § 129a requires DoD to use the least costly form of personnel (military, civilian or private contractor) and to analyze the advantages of each form of personnel:

> The Secretary of Defense shall use the least costly form of personnel consistent with military requirements and other needs of the Department.   In developing the annual personnel authorization requests to Congress and in carrying out personnel policies, the Secretary shall — (1) consider particularly the advantages of converting from one form of personnel (military, civilian, or private contract) to another for the performance of a specified job; and   (2) include in each manpower requirements report submitted under section 115a of this *title [10 USCS § 115a]* a complete justification for converting from one form of personnel to another.

18.   The National Defense Authorization Act ("NDAA") for Fiscal Year 2008 contained a requirement for DoD to develop insourcing guidelines and procedures, codified as 10 U.S.C. § 2463, which reads as follows:

> (a)  Guidelines Required
>    (1) The Under Secretary of Defense for Personnel and Readiness shall devise and implement guidelines and procedures to ensure that consideration is given to using, on a regular basis, Department of Defense civilian employees to perform new functions and functions that are performed by contractors and could be performed by Department of Defense civilian employees. The Secretary of a military department may prescribe supplemental regulations, if the Secretary determines such regulations are necessary for implementing such guidelines within that military department.

19.   The DoD in-sourcing guidelines and procedures that implement 10 U.S.C. § 2463 are available at the following website:

http://prhome.defense.gov/RSI/REQUIREMENTS/INSOURCE/insource_gui dance.aspx.

20.   The guidelines and procedures that Defendants issued and bound themselves for purposes of complying with 10 U.S.C. § 2463 are attached hereto as exhibits 1 through 4 as follows:

(A)  **Exhibit 1** - Deputy Secretary of Defense Memorandum, "Implementation of Section 324 of the National Defense Authorization Act for Fiscal Year 2008 (FY 2008 NDAA) — Guidelines and Procedures on In-Sourcing New and Contracted-Out

Functions," April 4, 2008.   The memorandum and its attachments are available at the following website: http://prhome.defense.gov/RSI/REQUIREMENTS/INSOURCE/insource_gui dance.aspx.

(B) **Exhibit 2** - "Under Secretary of Defense (Personnel and Readiness)'s Guidelines and Procedures for Implementation of 10 U.S.C. § 2463 (as added to the U.S.C. by Section 324 of the FY 2008 NDAA)".   This document is also "Attachment 2" to Exhibit 1.

(C) **Exhibit 3** - Deputy Secretary of Defense Memorandum, "In-Sourcing Contracted Services—Implementation Guidance," May 28, 2009.   The memorandum is available at the following website: http://prhome.defense.gov/RSI/REQUIREMENTS/INSOURCE/insource_gui dance.aspx.

(D) **Exhibit 4** - Directive-Type Memorandum (DTM) 09-007, "Estimating and Comparing the Full Costs of Civilian and Military Manpower and Contract Support", January 29, 2010-Incorporating Change 2, October 21, 2010.   The DTM 09-007 is available at the following website: http://prhome.defense.gov/RSI/REQUIREMENTS/INSOURCE/insource_cos ting.aspx.

21.   As stated in **Exhibit 1,** a purpose of the guidelines and procedures is to "help ensure that when DoD Components make

decisions to use DoD civilian employees, the decisions are fiscally informed and analytically based."

22.   As stated in **Exhibit 1**, the guidelines and procedures require Defendants "to manage closely 10 U.S.C. § 2463 actions to ensure responsible stewardship of Defense resources . . ..".

23.   A guideline and procedure follows:

4.   CONSIDERATIONS GOVERNING 10 U.S.C. § 2463 ACTIONS.  DoD Components shall comply with 10 U.S.C. § 129a, as implemented by DoD Instruction 1100.22, "Guidance for Determining Workforce Mix," when considering whether to use DoD civilian employees to perform new or expanded mission requirements, and functions that are performed by contractors but that could be performed by DoD civilian employees.

\* \* \*

4.3  For all other new or expanded mission requirements, and for all other functions that are performed under contract but that could be performed by DoD civilian employees, **DoD Components shall perform an economic analysis to determine whether DoD civilians or private sector contractors are the low cost provider and should perform the work.  Qualified cost analysts/experts shall perform the analyses using cost factors/models that account for the full costs of manpower, as appropriate, and make "like comparisons" of all relevant costs.**

\* \* \*

7.   PROCEDURES GOVERNMENT 10 U.S.C. § 2463 ACTIONS.  Requests for manpower shall be fiscally informed and closely managed to ensure responsible stewardship of Defense resources.

7.1 When a DoD Component has a new or expanded mission requirement or is considering whether to convert from contractor to government performance, **manpower managers shall follow standard manpower management procedures to determine and validate the manpower requirements.** This shall include verifying the mission functions, and tasks to be performed, required level of performance, and (consistent with title 10 U.S.C. § 129) workload necessary for mission success. Also, the effectiveness, efficiency, and economy of the activity shall be assessed to determine if improvements can be made to reduce workload. Officials shall ensure that performance requirements (i.e.., **required capability** or outcome) are accurately stated and directly relate to mission priority, available resources, and acceptable risk. In addition, the workforce mix (i.e., mix of military and civilian manpower and contract support) shall be determined consistent with policy in DoD Instruction 1100.22 and this memorandum. However, in certain cases, workforce mix decision may depend on the availability of DoD civilian personnel as indicated in paragraph 4.4 above.

See **Exhibit 2.**

24. A guideline and procedure follows:

5. <u>Steps for In-Sourcing Contracted Functions</u>.

\* \* \*

5.2.1. . . . As part of this process, the manpower official shall **determine/validate the manpower required to perform the services** following standard manpower procedures [see footnote 8] and . . . . [Footnote 8 states:] **Consistent with 10 U.S.C. §129, DoD Components shall not hire DoD civilians** based simply on the availability of contract funds and **without**

13

regard to workload or mission priority, but shall hire civilians based on the workload needed to accomplish assigned missions (i.e., manpower requirements) and the funds made available for the mission (manpower authorizations).

\* \* \*

5.2.2. If the functions are determined not to be IG or exempted from private-sector performance, and if there are no legal, regulatory, or procedural impediments to using DoD civilian employees to perform the work, the requiring official **shall request that a cost analysis be conducted to determine whether DoD civilian employees or the private sector would be the most cost effective provider.** This is consistent with 10 U.S.C. § 129a. When conducting cost analyses, DoD Components shall comply with the business rules in OSD PA&E's, "Directive-Type Memorandum (DTM)-09-007, Estimating and Comparing the Full Costs of Manpower and Contract Support," once it is issued. The DTM will be available at http://www.dtic.mil/whs/directives/corres/di r3.html.

5.2.2.1 **If the cost analysis shows that DoD civilian employees would be the most cost effective provider,** the requiring official shall notify the manpower official and resource manager. Once the funding is approved, the manpower should be authorized and the requiring official should notify the HRO Director to proceed with hiring the DoD civilian employees or coordinate, as appropriate, with military personnel officials to fill the requirement. These actions should be expedited so as not to impede initiation of the hiring process. In addition, the contracting officer should notify the contractor of the Department's decision to in-source the services. If requested by an employee of the contractor, information on the Federal hiring process should be provided.

**5.2.2.2   If the cost analysis shows that the private sector would be the most cost effective provider,** the requiring official shall provide the contracting officer written confirmation that consideration has been given to using DoD civilian employees to perform the work, as required by 10 U.S.C. § 2463, but that a cost analysis showed that the contractor is the most cost effective provider. **In such cases, the contracting officer shall re-compete the contract** or exercise option years, as appropriate.

See **Exhibit 3.**

25.   A guideline and procedure follows:

OSD Costing Information

If a function is determined to be commercial in nature, and is not otherwise exempted from private sector performance, **the Department should ensure that this function is performed in the most fiscally advantageous way possible (by either government employees or the private sector), consistent with the statutory provisions under 10 USC 129a.** This determination should be well-reasoned and informed by a cost analysis. This section contains information and guidance pertaining to the Department's 'full cost of manpower tool' and business rules for costing government performance of services.

See **Exhibit 4.**

26. A guideline and procedure follows:

1. <u>GENERAL</u>

* * *

b.  Workforce Mix Decisions.

* * *

(2) <u>Conversion from Contractor to
Government Performance — In-Sourcing.</u> As
provided in Reference (c), **if a review shows
that a function currently being performed
under contract could be performed by DoD
civilian employees, the official overseeing
the function shall conduct a cost comparison
using the business rules prescribed in this
attachment to determine whether DoD civilian
employees or a private-sector contractor
would perform the function at a lower cost.**
(See Reference (c) for steps to be taken
based on the results of the cost
comparison.)

See **Exhibit 4.**

27. Defendants' In-sourcing Decision violates DoD's
guidelines and procedures that implement 10 U.S.C. § 2463.

28. In rendering the In-sourcing Decision, Defendants
failed to consider the requirement of DoD's guidelines and
procedures that implement 10 U.S.C. § 2463.

29. Defendants' In-Sourcing Decision is not based upon any
standard.

30. Defendants' In-sourcing Decision is arbitrary,
capricious, an abuse of discretion and is otherwise not in
accordance with law.

31.   Defendants' In-Sourcing Decision is not based upon an economic analysis as to whether DoD civilians or private sector contractors are the most cost effective provider for performing the multi-media work.

32.   Defendants' In-Sourcing Decision is not based upon a "cost comparison . . . to determine whether DoD civilian employees or a private-sector contractor would perform the [multi-media services] . . . at a lower cost."

33.   Defendants did not "ensure" that its In-Sourcing is "fiscally informed and analytically based."

34.   Defendants' In-Sourcing Decision does not "ensure that [the multi-media work] . . . is performed in the most fiscally advantageous way possible (by either government employees or the private sector)".

35.   Defendants' In-Sourcing Decision is <u>not</u> predicated upon "use [of] the least costly form of personnel consistent with military requirements and other needs of the Department."

36.   Defendants are required to re-compete the Contract because a proper economic cost analysis reveals that a private contractor (such as Plaintiff) is most cost effective provider.

37.   Assuming Defendants' conducted a cost analysis, it did not "account for the full costs of manpower". Nor did it make "like comparisons of all relevant costs".

38.   Defendants rendered its In-Sourcing Decision "without regard to . . . the workload needed to accomplish assigned missions (i.e., manpower requirements)".

39.   Defendants' In-Sourcing Decision is not based upon "the manpower required to perform the services" as determined by "following standard manpower procedures."

40.   Defendants posted Job Announcement Number AFPCDEO-417621-144347-WLC to fill Photographer positions with a salary range of $50,620 to $65,801, series/grade of GS-1060-09 and a duty location of Dover Air Force Base, Delaware (hereinafter "the Job Announcement").

41.   Defendants posted the Job Announcement to hire photographers (GS-1060 series) to perform the services that are covered by the Contract.

42.   A copy of the Job Announcement is attached hereto as **exhibit 5,** and is available at the following website: "http://jobview.usajobs.gov/getjob.aspx?jobID=94702726&TabNum=6."

43.   Defendants hired individuals under this Job Announcement as Photographer (GS-1060 series) GS-9 grade, with a salary range of $50,620 to $65,801. This salary range is mandated for all GS-9 positions in the applicable locality pay area by federal law. See Exhibit 9. The use of a salary range in the Job Announcement necessarily shows that Defendants did not conduct an economic cost analysis to determine whether DoD

civilian employees or private contractors are the most cost effective provider.

44. *Assuming arguendo* that Defendants conducted an economic cost analysis, the $50,620 salary amount is not Defendants' total in-sourcing cost given the fact that the in-source salary can be $65,801. If a cost analysis had been conducted, at best, the in-sourcing cost amounts to <u>at least</u> $65,801.[2] Thus, Defendants' in-sourcing cost is at least 56% percent greater than the cost per employee to acquire the multi-media services under Plaintiff's competitively awarded contract.

---

[2] The full cost to the government for using DoD civilian employees includes many cost items in addition to salary, such as: Title 38 Medial Premium Pay; Overtime/Holiday/Other Pays; Incentive/Performance Awards; Retention Allowance; Social Security & Medicare (employer's contribution); recruitment/Relocation Bonuses; Health Care (employer's share FEHBP); PCS; Federal Employee Group Life Insurance (FEGLI) Transportation Subsidies; Worker's Compensation Payments; Retirement Accrual (employer's contribution); Federal Retirement Thrift Investment Board payments (TSP matching); Unemployment Insurance Payments (FUTA); Severance Pay/Separation Incentive; and Severance Health Benefit. See **Exhibit 4.**

45. The position of GS-1060 (ie., Photographer series) GS-9 grade (as posted in the Job Announcement) is a category IV Photographer (or "Photographer IV").

46. Photographer IV is a GS-9 grade as shown by the Department of Labor ("DOL"), Wage and Hour Division ("WHD") Service Contract Act ("SCA") Directory of Occupations, Table of Contents. A copy is attached hereto as **exhibit 6,** and is available at the following website:

http://www.dol.gov/whd/regs/compliance/wage/SCADirV5/Vers5Contents Table.pdf.

47. Photographer IV is qualified to perform the services that are covered by the Contract in addition to many services that are not covered by the Contract. Photographer IV exceeds the qualifications of the job position necessary to perform the minimum services covered by the Contract.

48. A comparison of the Photographer IV description contained in the "SCA Directory of Occupations (Fifth Edition)" with the Performance Work Statement set forth in the Contract reveals that a Photographer IV is qualified to perform the services that are covered by the Contract in addition to services that are not covered by the Contract, and that therefore Photographer IV exceeds the qualifications of the job position necessary to perform the minimum services covered by the Contract. An excerpt of the "SCA Directory of Occupations

(Fifth Edition)" is attached hereto as **exhibit 7**, and is available at the following website:

http://www.dol.gov/whd/regs/compliance/wage/SCADirV5/Vers5Contents Table.pdf. A copy of the Performance Work Statement of the Contract is attached hereto as **exhibit 8**.

49. Defendants' In-Sourcing Decision has irreparably injured Plaintiff because the insourced work that has been completed is work that Plaintiff can not compete for award a contract. This lost opportunity has irreparably injured Plaintiff, and continues to irreparably injure Plaintiff each day that the multi-media service is completed by a DoD civilian employee.

50. Defendants' In-Sourcing Decision has irreparably injured Plaintiff because it has unfairly and wrongfully deprived Plaintiff from re-competing for award of a contract for the multi-media services.

51. Defendants' In-Sourcing Decision has injured the public because it has resulted in selection of DoD civilian employees, the most expensive source to perform the services, and the injury increases as the DoD civilian employees continue to perform the services. The public is best served by having the services performed by the most cost effective form of personnel, which is a private contractor.

52.   Defendants'   In-Sourcing   Decision   has   injured Defendants because it has tainted the integrity of the public procurement system.

53.   Defendants' In-Sourcing Decision has resulted in the loss in the public's confidence in reasonable expenditure of public funds as a result of Defendants' "[ir]responsible stewardship of Defense resources".

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

54.   Paragraphs   1    through   53    are   incorporated   by reference.

55.   Defendants'   In-Sourcing   Decision   is   arbitrary, capricious, an abuse of discretion, and is not in accordance with law.

56.   Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 issue an Order that "hold[s] unlawful and set aside [the] agency action, findings, and conclusions".

57.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, issue an Order that declares the agency action unlawful.

**WHEREFORE,** Plaintiff prays that this Court grant the relief requested below.

### SECOND CLAIM FOR RELIEF
### (Injunctive relief)

58.   Paragraphs 1 through **53** are incorporated by reference.

59.   Defendants' In-Sourcing Decision is illegal.

60. Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, issue an Order that preliminarily and permanently enjoins and sets aside the agency action.

**WHEREFORE,** Plaintiff prays that this Court grant the relief requested below.

### THIRD CLAIM FOR RELIEF
### (EAJA – Attorney Fees)

61. Paragraphs **1** through **53** are incorporated by reference.

62. Defendants' In-Sourcing Decision necessitated that Plaintiff retain the legal services of undersigned counsel to protect and enforce its rights so as to ensure that Defendants conduct a complaint in-sourcing decision making process for multi-media services that Plaintiff had previously performed as the incumbent contractor under contract FA4497-10-D-0001.

63. Defendants' position is not substantially justified.

64. Plaintiff satisfies the eligibility requirements of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412(d).

65. Pursuant to EAJA, Plaintiff requests the Court to award costs incurred by Plaintiff in the litigation, reasonable fees and expenses of attorneys and any other relief as determined by the Court in its discretion.

## Request For Relief

**Wherefore**, Plaintiff prays that this Court order the following relief:

1.  Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 issue an Order that "hold[s] unlawful and set aside [the] agency action, findings, and conclusions".

3.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, issue an Order that declares the agency action unlawful.

4.  Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, issue an Order that preliminarily and permanently enjoins and sets aside the agency action.

5.  Enter an Order awarding Plaintiff costs of pursuing this action, including costs incurred by Plaintiff in the litigation, reasonable fees and expenses of attorneys and any other relief as determined by the Court in its discretion;

6.  Any such other and further relief as the Court may deem just and proper.

DATED:   22 April 2011

                    Respectfully Submitted,

                    Lawrence J. Sklute
                    D.C. Bar No. 433811

                    Sklute & Associates
                    Ninth Floor
                    1150 Connecticut Avenue
                    Washington, D.C. 20036
                    (202) 637-1223

                    Counsel For Plaintiff